IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| RAMON F.,[1] | ) | Civil Action No. 2:24-02970-MGL-MGB |
| | ) | |
|       Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| FRANK BISIGNANO,[2] | ) | **REPORT AND RECOMMENDATION** |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
|       Defendant. | ) | |
| | ) | |

Plaintiff Ramon F. ("Plaintiff") brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration (the "Administration") regarding his claim for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). This matter was referred to the Magistrate Judge for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B). For the reasons set forth herein, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED**, and that the case be **REMANDED** for further consideration.

---

[1]    The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2]    Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

Plaintiff was 49 years old on his date last insured, March 31, 2022. (R. at 75, 81.) Plaintiff claims disability due to multiple sclerosis. (R. at 75.) Plaintiff has past relevant work as a horse trainer and truck driver. (R. at 80–81.)

Plaintiff filed an application for DIB on February 10, 2021, alleging a disability onset date of May 20, 2020. (R. at 73.) His application was denied initially and on reconsideration. (R. at 73.) After a hearing before an Administrative Law Judge ("ALJ") on June 7, 2023, the ALJ issued a decision on August 17, 2023, in which the ALJ found that Plaintiff was not disabled. (R. at 73–82.) The Appeals Council declined the request for review, making the ALJ's August 17, 2023 decision the Commissioner's final decision for purposes of judicial review. (R. at 1–7.)

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

(1) The claimant last met the insured status requirements of the Social Security Act on March 31, 2022.

(2) The claimant did not engage in substantial gainful activity during the period from his alleged onset date of May 20, 2020 through his date last insured of March 31, 2022 (20 CFR 404.1571 *et seq*.).

(3) Through the date last insured, the claimant had the following severe impairments: multiple sclerosis (20 CFR 404.1520(c)).

(4) Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

(5) After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can never climb a ladder, rope, or scaffold; is limited to occasional stooping, kneeling, crouching, crawling, and climbing a ramp or stairs; and is limited to frequent but not constant handling and fingering.

(6) Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

(7) The claimant was born on August 28, 1972 and was 49 years old, which is defined as a younger individual age 18-49, on the date last insured. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

(8) The claimant has at least a high school education (20 CFR 404.1564).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10) Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

(11) The claimant was not under a disability, as defined in the Social Security Act, at any time from May 20, 2020, the alleged onset date, through March 31, 2022, the date last insured (20 CFR 404.1520(g)).

(R. at 75–82.)

## APPLICABLE LAW

### I.     Relevant Statutory Law

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). The Act also provides that SSI disability benefits shall be available for aged, blind, or disabled persons who have income and resources below a specific amount. *See* 42 U.S.C. § 1381 *et seq.* "Disability" is defined in the Act as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB context); 42 U.S.C. § 1382c(a)(3)(A) (SSI context).[3]

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520 (DIB context); 20 C.F.R. § 416.920 (SSI context). If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4) (DIB context); 20 C.F.R. § 416.920(a)(4) (SSI context).

The claimant bears the burden of proof with respect to the first four steps of the analysis. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017). Once the claimant has established an inability to return to past relevant work, the burden shifts to the Commissioner to show that the claimant—considering age, education, work experience, and residual functional capacity—can perform alternative jobs and that such jobs exist in the national economy. SSR 82-62, 1982 WL 31386, at *3; *Grant*, 699 F.2d at 191; *Pass*, 65 F.3d at 1203; *Monroe v. Colvin*, 826 F.3d 176, 180 (4th Cir. 2016).

---

[3] "[T]he definition of disability is the same under both DIB and SSI . . . ." *Morgan v. Saul*, 9:19-cv-1390-BHH-BM, 2020 WL 3318630, at *1 n.1 (D.S.C. June 3, 2020) (citing *Emberlin v. Astrue*, No. 06-4136, 2008 WL 565185, at *1 n.3 (D.S.D. Feb. 29, 2008)).

## II. Standard of Review

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the Commissioner supported his findings with substantial evidence and applied the correct law. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015); *Woods v. Berryhill*, 888 F.3d 686, 691 (4th Cir. 2018); *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020); 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). Consequently, the Act precludes a de novo review of the evidence and requires that the court uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988); *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012); *Mascio*, 780 F.3d at 640; *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 383 (4th Cir. 2021); 42 U.S.C. § 405(g).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Dowling*, 986 F.3d at 383 (citing *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). It is "more than a mere scintilla of evidence but may be less than a preponderance." *Pearson*, 810 F.3d at 207 (citing *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)). In reviewing for substantial evidence, the court does not undertake to "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Hancock*, 667 F.3d at 472; *Arakas*, 983 F.3d at 95; *Dowling*, 986 F.3d at 383. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the reviewing court must defer to the ALJ's decision. *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020) (citing *Hancock*, 667 F.3d at 472).

However, the court does not "reflexively rubber-stamp an ALJ's findings." *Dowling*, 986 F.3d at 383 (citing *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017)). An ALJ may not cherry-

5

pick, misstate, or mischaracterize material facts. *Arakas*, 983 F.3d at 99 (citing *Lewis*, 858 F.3d at 869). Rather, ALJs "must 'build an accurate and logical bridge' from the evidence to their conclusions." *Arakas*, 983 F.3d at 95 (quoting *Monroe*, 826 F.3d at 189).

## **DISCUSSION**

Plaintiff contends that the ALJ's decision should be reversed because the ALJ improperly penalized Plaintiff for failing to seek additional treatment and follow treatment recommendations without adequately considering Plaintiff's ability to afford such treatment, which contravenes Social Security Ruling 16-3p ("SSR 16-3p"). (Dkt. No. 9 at 14.) More specifically, Plaintiff asserts that "[r]ather than considering [Plaintiff's] inability to obtain additional treatment because of his financial means, the ALJ chose to assume that [Plaintiff's] allegations were not credible without the required consideration of [Plaintiff's] financial constraints." (*Id*. at 15.) According to Plaintiff, "without proper consideration of the reasons that [Plaintiff] did not pursue additional treatment, the ALJ's unsupported presumptions and remaining analys[i]s was flawed and infected his RFC and remaining determinations. Therefore[,] remand is required." (*Id*. at 15–16.)

In response, the Commissioner argues that "the ALJ did not rely solely on Plaintiff's failure to follow medical treatment but instead articulated several valid reasons for finding Plaintiff's statements were not fully consistent with the objective medical and other evidence in the record." (Dkt. No. 13 at 10.) Further, the Commissioner contends that the ALJ expressly acknowledged Plaintiff's financial situation, and that "the ALJ's analysis of the severity and functional effects of Plaintiff's MS did not turn on his failure to seek treatment—on the contrary, the ALJ carefully considered the entire record, including Plaintiff's treatment history, examination findings, the state agency experts' prior administrative findings, and Plaintiff's daily activities." (*Id*. at 14–15.)

To justify his residual functional capacity ("RFC") finding, the ALJ explained:

I have considered the claimant's Multiple Sclerosis as well as the claimant's testimony regarding the numbness and tingling in his hands and in limiting him to light work with no climbing ladders, ropes, or scaffolds, occasional stooping, kneeling, crouching, crawling, and climbing a ramp or stairs, and frequent but not constant handling and fingering.

The added complications of pain, fatigue and medication side effects have been considered in accordance with SSR 16-3p and SSR 96-8p in assessing the residual functional capacity, and accommodated by limiting the claimant to light work with no climbing ladders, ropes, or scaffolds.

As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because they are not fully supported by the objective clinical findings and observations of record. Findings on physical examination are largely normal throughout the longitudinal record, with only some positive findings such as edema or decreased sensation. The claimant also reports that he is independent with his activities of daily living and is able to drive a car. (10F/2).

Moreover, the claimant has not been compliant with recommended follow-up or treatment. For example, the claimant continues to smoke cigarettes, despite being advised to quit smoking (1F/9; 2F/3; 5F/5; 10F/1; 18F/6). The claimant has also not been compliant with recommended treatment for Multiple Sclerosis, reporting that he could not afford it or that the side effects were undesirable.

Overall, the claimant has not sought medical treatment with the frequency that could reasonably be expected from an individual who is suffering from pain and other symptoms of the intense and disabling nature, which the claimant alleges. The claimant's access to medical care has been considered pursuant to SSR 18-3p.[4] While I recognize that the claimant's financial situation is not optimal and it is unfortunate he has not been able to afford healthcare, there is no evidence indicating that the claimant exhausted all resources available to individuals who cannot afford medical treatment or medication such as hospitals, clinics, or community agencies.

---

[4]     This appears to be a scrivener's error. SSR 18-3p involves a claimant's failure to follow prescribed treatment, but analysis under SSR 18-3p is triggered only after a finding that a claimant is otherwise disabled and entitled to benefits. By contrast, SSR 16-3p, which is most applicable here, provides, in relevant part, that:

> [I]f the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints.

SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017).

(R. at 79.)

Based upon the foregoing, the ALJ clearly relied, at least in part, on Plaintiff's noncompliance with recommended treatment for his multiple sclerosis. (R. at 79.) Though the ALJ noted Plaintiff's hearing testimony that "he could not afford [certain treatment] or that the side effects were undesirable," and recognized that "claimant's financial situation is not optimal and it is unfortunate he has not been able to afford healthcare," the ALJ ultimately discounted Plaintiff's inability to afford treatment based on a lack of evidence "indicating that the claimant exhausted all resources available to individuals who cannot afford medical treatment or medication such as hospitals, clinics, or community agencies." (R. at 79.)

However, the ALJ's decision neglects to mention Plaintiff's testimony that: (1) he could not continue taking the medicine prescribed by his neurologist to treat his multiple sclerosis because he could not afford to pay for it; (2) he tried to get into a free clinic in North Carolina, but the wait was very long, and he did not get in before he moved to Texas in early 2023; (3) he looked for a free clinic in Texas but had not found one, and (4) the insurance coverage he had obtained since moving to Texas was "junky, worthless [and didn't] pay for anything." (R. at 122–23.) Although this testimony does not necessarily reflect that Plaintiff exhausted all resources available to him, the ALJ's failure to mention this testimony constitutes reversible error where, as here, the record plainly indicates that Plaintiff's inability to afford treatment impacted his compliance with recommended treatment, and the ALJ used that noncompliance as a basis on which to determine Plaintiff was not disabled. Courts routinely find remand is warranted under such circumstances. *See, e.g., Thomas v. Colvin*, No. 6:15-cv-3251-MBS-KFM, 2016 WL 5109199, *10 (D.S.C. Aug. 24, 2016) ("Courts in this district have consistently found remand necessary where the ALJ

8

considered the claimant's failure to seek treatment in the disability determination despite evidence in the record of the claimant's inability to afford treatment.") (collecting cases).

What is more, the ALJ's decision to omit this testimony from his decision indicates that he did not comply with SSR 16-3p. SSR 16-3p requires an ALJ to consider a claimant's ability to access free or low-cost medical services before discounting the impact of a claimant's symptoms on his or her ability to work. SSR 16-3p, 2017 WL 5180304, at *9–10 (Oct. 25, 2017). Here, the ALJ did not explain why he found Plaintiff's attempts to access free or low-cost medical services insufficient—to the contrary, he did not mention Plaintiff's attempts to access free or low-cost medical services at all. (R. at 76–80.) Thus, the decision does not make clear that the ALJ properly considered Plaintiff's access (or lack thereof) to free or low-cost services. *See*, *e.g.*, *Amanda G. v. O'Malley*, No. 2:23-cv-02228-DCC-MGB, 2024 WL 3432181, at *9 (D.S.C. June 18, 2024) (noting that ALJ's failure to discuss hearing testimony on the issue of whether the plaintiff's limited treatment was the result of inability to pay indicated ALJ gave no consideration to the issue), *adopted sub nom. Gilmer v. Comm'r of Soc. Sec. Admin.*, 2024 WL 3429788 (D.S.C. July 15, 2024); *Brownlee–Nobs v. Colvin*, No. 1:14–cv–03988, 2015 WL 5908524, at *14 (D.S.C. Oct. 7, 2015) (remanding where ALJ "failed to make specific findings regarding the resources available to Plaintiff and whether her failure to seek additional treatment and medication was based upon her inability to pay").

Further, courts in this circuit have held that "an ALJ is required to develop the record as to whether a claimant's lack of resources contributed to the failure to seek or maintain care when the ALJ bases any or part of a denial of disability benefits on a failure to seek or maintain care." *Michael C. v. Kijakazi*, No. 22-cv-0029-BAH, 2022 WL 13945281, at *5 (D. Md. Oct. 24 2022); *see also Fleming v. Barnhart*, 284 F. Supp. 2d 256, 274 (D. Md. 2003) ("[To deny benefits] based

9

on noncompliance, in full or in part, the Commissioner must conduct a particularized inquiry and develop a record establishing by substantial evidence that the claimant's impairment is reasonably remediable . . . and that the claimant lacks good cause for failing to follow a prescribed treatment program."); *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (noting the ALJ "has a duty to explore all relevant facts and inquire into issues necessary for adequate development of the record and cannot rely on the evidence submitted by the claimant when that evidence is inadequate"). Here, the ALJ did not develop Plaintiff's testimony regarding his inability to pay for prescribed medical treatment and/or his inability to access free or low-cost medical services. (R. at 121–23.)

Ultimately, "[a] claimant may not be penalized for failing to seek treatment she cannot afford." *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (holding that the ALJ erred in determining that the plaintiff's impairment was not severe based on her failure to seek treatment where the record reflected that she could not afford treatment); *see also Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir. 1984) ("It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him"). "As a result, an ALJ should not discount a claimant's subjective complaints on the basis of her failure to seek medical treatment when she has asserted—and the record does not contradict—that she could not afford such treatment." *Dozier v. Colvin*, 2015 WL 4726949, *3 (D.S.C. Aug. 10, 2015) (citing *Lovejoy*, 790 F.2d at 1117). Because the ALJ improperly penalized Plaintiff for failing to seek treatment he could not afford, the undersigned **RECOMMENDS** that the Commissioner's decision must be **REVERSED**, and the case **REMANDED** for further consideration of this issue.

## **CONCLUSION**

For the reasons set forth above, the undersigned finds that the Commissioner's decision should be **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g), and that the case should be **REMANDED** for a new hearing consistent with this Report and Recommendation.

    **IT IS SO RECOMMENDED**.

                                                                  _____
                                                                    MARY GORDON BAKER
                                                                    UNITED STATES MAGISTRATE JUDGE

June 4, 2025
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).